UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK TUFANO,

Plaintiff,

-against-

SOCIAL SECURITY ADMINISTRATION and THE IMA GROUP,

Defendants.

**OPINION & ORDER**

25-CV-06515 (PMH)

Philip M. Halpern, United States District Judge:

Frank Tufano ("Plaintiff"), proceeding *pro se*, brings this action against the Social Security Administration ("SSA") and The IMA Group ("IMA" and together, "Defendants"). (Doc. 1-1, "Compl."). Before the Court is IMA's motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), (6), and 42 U.S.C. § 405(g) filed on December 15, 2025. (Doc. 1; Doc. 1-1; Doc. 1-2; Doc. 1-3, "IMA Br."; Doc. 1-4).[1] Plaintiff filed opposition on January 9, 2026 (Doc. 16, "Pl. Br."), and IMA filed reply on January 23, 2026 (Doc. 17, "Reply"). Plaintiff also filed a surreply without leave of Court (Doc. 18, "Surreply"), which the Court considers given Plaintiff's *pro se* status. *Accord Collier v. Superintendent*, No. 18-CV-01104, 2019 WL 8370783, at *1 n.1 (N.D.N.Y. Apr. 5, 2019) (considering "improperly filed" reply papers "given the special solicitude granted to pro se litigants").

For the reasons set forth below, Defendant IMA's motion to dismiss is granted in part and denied in part.

[1] The Court does not address Defendant SSA's motion to dismiss and for summary judgment (Doc. 36) in this Opinion and Order, as the motion is not, as of this date, fully submitted.

## BACKGROUND

The Court, for purposes of deciding the pending motion, accepts as true the well-pled factual allegations in the Complaint and draws all reasonable inference in Plaintiff's favor. *See Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 445 (S.D.N.Y. 2020).

Plaintiff alleges that he became "physically disabled and unable to work as a result of a botched eye surgery that occurred in November of 2023." (Compl. ¶ 1). Plaintiff now has "compromised vision as well as eye pain," is "bedridden the majority of the day," and "is unable to perform most basic personal tasks by himself . . . ." (*Id.* ¶¶ 2-3). Plaintiff has undergone ten unsuccessful surgical procedures in an attempt to "restore his vision and physical appearance . . . ." (*Id.* ¶ 4).

Plaintiff was examined by Defendant IMA at an appointment scheduled by Defendant SSA on May 29, 2025. (*Id.* ¶¶ 7, 21). This appointment caused Plaintiff to suffer "permanent harm and damage to his eyes." (*Id.* ¶ 7). The doctor, at this appointment, insisted on giving Plaintiff drops to dilate his eyes, which caused Plaintiff to suffer "significant migraine[s] for several days after the procedure." (*Id.* ¶ 22). The doctor also "abruptly lowered [Plaintiff] back in the chair, and violently held down [Plaintiff]'s head while forcing an instrument in his eyes." (*Id.* ¶ 23). Plaintiff, following this appointment, had "newly occurring pain and dryness in both his eyes" and "his eyes were more asymmetrical than before . . . ." (*Id.* ¶ 25).

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action "when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019). "The party invoking

federal jurisdiction bears the burden of establishing jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009). When deciding a Rule 12(b)(1) motion, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers*, 558 F.3d at 143. "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be deteremined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II. <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 371 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[*p*]*ro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cnty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The

Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

Plaintiff presses four claims for relief: (1) fraud against Defendant SSA; (2) violation of 18 U.S.C. § 242 and his Fourteenth Amendment rights against Defendant SSA; (3) civil conspiracy against both Defendants; and (4) medical malpractice against both Defendants. (Compl. ¶¶ 14-26).

Defendant IMA moves to dismiss all of Plaintiff's claims. (*See* Doc. 15). However, Plaintiff does not plead his first and second claims for relief against Defendant IMA. (*See* Compl. ¶¶ 14-17). Thus, the Court only considers, on this motion, Plaintiff's third and fourth claims for relief, which are in fact asserted against Defendant IMA. *See Crab House of Douglaston v. Newsday Inc.*, 801 F. Supp. 2d 64, 77 n.11 (E.D.N.Y. 2011) ("As [the party] is not listed as a defendant in the eight counts enumerated in the latter portion of the [complaint], the Court construes the [complaint] as not having named [the party] as a defendant."); *Murphy v. Onondaga Cnty.*, No. 18-CV-01218, 2022 WL 819281, at *6 n.7 (N.D.N.Y. Mar. 18, 2022) (finding claim was not asserted against a defendant where the defendant was not listed in the heading of the claim or paragraphs following the claim).[2]

### I. Civil Conspiracy Claim

Plaintiff alleges that "[t]he Social Security Administration likely conspired internally between employees and externally with The IMA Group to falsify documents and ignore [Plaintiff]'s symptoms that are preventing him from working" and that "[b]oth the Social Security

[2] Defendant IMA argues that Plaintiff's second claim for relief, for fraud, does not meet the pleading requirements of Federal Rule of Civil Procedure 9(b). (*See* IMA Br. at 10-13). Since the Court finds that this claim is not pled against Defendant IMA, the Court does not address Defendant IMA's motion to the extent it is brought pursuant to Rule 9(b).

Administration[']s employees and IMA Group benefit financially from denying [Plaintiff] his disability benefits." (Compl. ¶¶ 19-20). Defendant IMA argues that this claim should be dismissed because "Plaintiff did not exhaust his remedies or demonstrate entitlement to excusal of the exhaustion requirement . . . ." (IMA Br. at 5). The Court agrees with Defendant IMA.

"The Social Security Act permits claimants to seek review in federal court of a 'final decision of the Commissioner of Social Security made after a hearing to which [the claimant] was party.'" *Hines v. Soc. Sec. Admin.*, No. 26-CV-03653, 2026 WL 1453628, at *3 (S.D.N.Y. May 22, 2026) (quoting 42 U.S.C. § 405(g)). Consequently, "[i]f a complaint does not contain allegations showing that there has been a final decision, then it does not satisfy the requirements for jurisdiction under Section 405(g)." *Id.* (citing *Weinberg v. Salfi*, 422 U.S. 749, 764 (1975)); *see also Escalera v. Comm'r of Soc. Sec.*, 457 F. App'x 4, 5-6 (2d Cir. 2011) (summary order) (delineating steps required to administratively exhaust a Social Security benefits determination).[3]

Here, Plaintiff has pled no facts suggesting that he took any steps to exhaust his civil conspiracy claim. (*See* Compl.). "However, a plaintiff's failure to exhaust administrative remedies can be excused if (1) the claim is collateral to a demand for benefits, (2) exhaustion would be futile, or (3) requiring exhaustion would result in irreparable harm." *Skubel v. Fuoroli*, 113 F.3d 330, 334 (2d Cir. 1997) (citing *Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996)). "[E]xhaustion of administrative remedies is the rule, and waiver the exception," *Bastek v. Federal Crop. Ins. Corp.*, 145 F.3d 90, 93 (2d Cir. 1998), and Plaintiff does not even argue that his failure to exhaust should be excused (*see* Pl. Br.; Surreply). Regardless, Plaintiff's conspiracy claim is not "collateral to a demand for benefits," as he alleges, for this claim, that Defendants conspired "to falsify

---

[3] Although Defendant IMA does not address this issue, nor does Plaintiff raise it, the Court notes that § 405's exhaustion requirements can still apply to private entities. *See Bentley v. Wellpoint Cos., Inc.*, No. 11-CV-08963, 2012 WL 546991, at *6 n.5 (S.D.N.Y. Feb. 17, 2012) ("The fact that Plaintiff is suing private entities provides no relief from the jurisdictional bar of § 405(h).").

documents" related to Plaintiff's disability status and that both Defendants "benefit financially from denying [Plaintiff] his disability benefits." (Compl. ¶ 20); *see Pavano*, 95 F.3d at 150 (finding claims were "not collateral to . . . demand for Medicare benefits" where "[t]he gravamen of [the plaintiffs'] complaint was that the Government wrongly denied them benefits."). Additionally, exhaustion would not be futile, as "[a] final agency decision and developed written record would ensure a more complete review in federal court." *Escalera*, 457 F. App'x at 6-7. So too, Plaintiff has not demonstrated that "requiring exhaustion would result in irreparable harm," as he has not shown "that no *post hoc* relief would be adequate." *Id.* at 7 (quoting *Smith v. Schweiker*, 709 F.2d 777, 780 (2d Cir. 1983)).

In sum, Plaintiff does not allege that he properly exhausted his administrative remedies, a requirement for bringing his civil conspiracy claim, and he has not shown that the exhaustion requirement should be waived. *Accord Liner v. Jenkins*, No. 22-CV-03448, 2022 WL 4097189, at *4 (S.D.N.Y. Sept. 2, 2022) ("Inasmuch as Plaintiff is challenging a decision of the SSA as to his claims for Social Security benefits, he does not allege facts showing that he exhausted the available remedies before bringing this action, or that the exhaustion requirement should be waived."). [4]

Accordingly, Plaintiff's civil conspiracy claim against Defendant IMA is dismissed.

II. Medical Malpractice

Plaintiff's fourth claim for relief is for medical malpractice.[5] Defendant IMA does not argue that Plaintiff was required to exhaust his medical malpractice claim, but nevertheless argues that

---

[4] Plaintiff, in his improper surreply, states that it is "possible" that Defendant IMA "colluded with internal individuals at the Social Security administration to commit . . . fraudulent concealment . . . ." (Surreply at 1). To the extent Plaintiff's surreply suggests that he did intend to plead either of his first two claims for relief against Defendant IMA, even though no allegations are made in the Complaint, those claims likewise fail because Plaintiff did not plead exhaustion or that his failure to exhaust should be waived.

[5] "Presumably, plaintiff is attempting to attach liability to [Defendant IMA] for the alleged malpractice of its employee . . . under the theory of *respondeat superior*, which is, generally, applicable in New York state

it should be dismissed because it "is based entirely on speculation" and "Plaintiff pleads no facts to support the departure and causation elements of this state-law claim." (IMA Br. at 15).

"Under New York law, the 'essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury.'" *Ongley v. St. Lukes Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018) (summary order) (quoting *DiMitri v. Monsouri*, 754 N.Y.S.2d 674, 675 (App. Div. 2003)). "In order to state a claim for medical malpractice, a plaintiff 'must specify the injuries he suffered' as a result of the deviation from accepted medical practice and 'allege sufficient facts to demonstrate how his injuries were caused by a deviation from the standard of care.'" *Carter v. United States*, No. 22-CV-06715, 2024 WL 1345313, at *5 (E.D.N.Y. Mar. 29, 2024) (quoting *Isaac v. City of New York*, No. 17-CV-01021, 2018 WL 1322196, at *7 (S.D.N.Y. Mar. 13, 2018)).

Defendant IMA relies primarily on *O'Neill v. Wilder*, 164 N.Y.S.3d 480 (App. Div. 2022). However, contrary to Defendant IMA's representations (IMA Br. at 16), *O'Neill* did not concern a medical malpractice claim. *O'Neill*, 164 N.Y.S.3d at 480 ("In an action, inter alia, to recover damages for battery and intentional infliction of emotional distress . . . ."). Instead, *O'Neill* simply stands for the general proposition that a Court may dismiss a complaint, albeit under CPLR § 3211(a), where "the core factual allegations and the purported involvement of the defendant are based on mere speculation." *Id.*

Here, Plaintiff has plausibly alleged a medical malpractice claim against Defendant IMA under federal pleading standards. He alleged that, at an examination by one of Defendant IMA's doctors, the doctor "abruptly" lowered him in a chair, "violently held down" his head, and "forc[ed] an instrument in his eyes to examine them." (Compl. ¶¶ 23). Plaintiff alleges that, after

---

medical malpractice claims." *Brown v. County of Jefferson*, No. 20-CV-01192, 2021 WL 2941919, at *4 n.4 (N.D.N.Y. June 11, 2021) (citing *Hill v. St. Clare's Hosp.*, 490 N.E.2d 823 (1986)).

the examination, he "had newly occurring pain and dryness in both his eyes, and he noticed that his eyes were more asymmetrical than before . . . ." (*Id.* ¶ 25). The doctor's alleged violent and forceful examination of Plaintiff could amount to a "deviation or departure from accepted medical practice" and that Plaintiff's new symptoms began following this appointment supports an inference that this deviation or departure caused Plaintiff injury. *See Porter v. PrimeCare Med. Inc.*, No. 25-CV-06185, 2026 WL 2295247, at *5 (W.D.N.Y. Aug. 10, 2026) ("Although the amended complaint certainly lacks factual detail, it nonetheless states a colorable claim for medical malpractice.").

Accordingly, Defendant IMA's motion to dismiss Plaintiff's medical malpractice claim is denied.

III. Leave to Amend

Plaintiff's request for leave of Court to amend his Complaint (Pl. Br. at 2), is denied without prejudice as Plaintiff has not identified how he would cure the deficiencies in his Complaint. *See Zottola v. Eisai Inc.*, 564 F. Supp. 3d 302, 319 (S.D.N.Y. 2021) ("The Second Circuit has indicated that 'when a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend." (quoting *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) (summary order)). Indeed, given the failure to plead exhaustion or exemption therefrom, and given that Plaintiff commenced this action just over thirty days following the underlying event at issue (*Compare* Compl. ¶ 22 (noting that Plaintiff was examined by Defendant IMA's doctor on May 29, 2025), *with id.* at 6 (complaint dated June 30, 2025), amendment appears to be futile as Plaintiff filed this action well before any appeal could have been taken and/or completed. Plaintiff's medical malpractice claim against Defendant IMA will proceed to discovery, and, as Plaintiff has offered no explanation for how he would be able to

cure the defects in the civil conspiracy claim, the Court denies Plaintiff's request, made in the alternative in his opposition brief, for leave to amend.

## CONCLUSION

For the foregoing reasons, IMA's motion to dismiss is GRANTED as to Plaintiff's civil conspiracy claim but otherwise DENIED. Plaintiff's request for leave to amend, made in the alternative in his opposition brief, is DENIED.

Defendant IMA is directed to file an answer to the Complaint within 14 days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to terminate the motion sequence pending at Doc. 15.

**SO ORDERED.**

Dated: White Plains, New York
September 21, 2026

PHILIP M. HALPERN
United States District Judge